## Midland Stores Company, Incorporated v. Stallard.

(Decided February 25, 1930.)

THEOBOLD & THEOBOLD for appellant.

R. C. LITTLETON for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This is a suit by Catherine Stallard against the Midland Stores Company and O. L. Stanard to recover the sum of $584 with interest from August 3, 1928. The right of recovery is based on the following facts: On July 24, 1928, plaintiff contracted with the Midland Stores Company to buy four shares of its corporate stock at the price of $584. On that day she drew a check for that amount payable to the Midland Stores Company, which check was indorsed by the defendant, O. L. Stanard, and cashed by him on August 3, 1928. At that time Stanard was the president of the Midland Stores Company, and as such was authorized to receive money on its behalf. The defendants failed to issue and deliver the stock, but converted the proceeds of the check to their own use. The Midland Stores Company defended on the ground that it had no contract with plaintiff and was not a party to the transaction; that the stock in controversy was owned by one Frail, who sold the stock to O. L. Stanard individually and Stanard sold the stock to C. W. Stallard, who obtained the check from his sister as a loan; and that it

received no check nor money from plaintiff. O. L. Stanard, who lived in Huntington, was not served with process. On completion of the issues the case was submitted to a jury, which returned a verdict in favor of plaintiff against the Midland Stores Company. The Midland Stores Company appeals.

It seems that plaintiff's brother-in-law, C. W. Stallard, who had been appointed manager of the Midland Stores Company's local store at Grayson, had made some kind of arrangement by which he was to buy or sell to others seven shares of the company's stock. According to plaintiff and her brother-in-law, she drew the check in question and delivered it to her brother to take to Mr. Stanard for four shares of stock in the Midland Stores Company. C. W. Stallard took the check and delivered it to Mr. Frail, who was still working for the company. This happened on Tuesday or Wednesday. On the following Friday she was in the store and saw Mr. Frail. C. W. Stallard told Mr. Frail that she was the lady who was taking the stock. Because of Mr. Stanard's absence plaintiff was not to get the stock until two weeks. The two weeks passed and the stock was not sent. She called up the bank on which the check was drawn with the intention of holding her money until the stock was sent, but the check had already been cashed. She afterwards called up O. L. Stanard, president of the company, and talked to him several times. He told her that he knew that the shares were to be issued to Catherine Stallard, but thought that Catherine Stallard was C. W. Stallard's wife. He further told her to go to the Midland Stores on Saturday and the stock would be there. She went to the Midland Stores, but the stock was not there. She again called up Mr. Stanard, who told her that she need not worry about the stock; that she would get it as soon as C. W. Stallard complied with the rest of his contract. On January 19, 1929, the Midland Stores Company, through O. L. Stanard, president, wrote plaintiff that the records of the company showed that her brother-in-law had borrowed $584 to invest in the Midland Stores Company, and that her brother-in-law had failed to make the contract good. In this letter attention was called to the 8 per cent. preferred stock of the company with the suggestion that she might take that stock and that the matter might be worked out in that way. There were

other letters suggesting that no settlement could be made with plaintiff until the matter between the company and C. W. Stallard was adjusted. Both plaintiff and her brother-in-law denied that the check was given to him as a loan. C. W. Stallard further stated that at the time he delivered the check to Mr. Frail he explained to him that plaintiff was taking four shares of stock in the stores, and told him that the shares were to be issued in her name. Later on he visited the company in Huntington and offered to take the remaining three shares, but the general manager advised him not to do so as he might lose some money. On the other hand, O. L. Stanard, president of the company, deposed that plaintiff did not buy any stock from the Midland Stores Company at all. He admitted that the check was received by his book-keeper and credited to his personal account. He as president had no authority to indorse checks, but the secretary had. He himself and not the Midland Stores Company got credit for the money. He had no authority from Catherine Stallard to credit the account of Charles Stallard, except that Catherine turned the money over to them. Charles Stallard agreed to buy seven shares at 146. He did not remember whether or not he told Charles Stallard he need not take and pay for the other three shares. No shares had ever been issued by the Midland Stores Company either to Catherine Stallard or Charles Stallard. He was holding the money because he was trying to get a final settlement with Charles Stallard. The indorsement on the check was in the handwriting of O. W. Kunz. The Midland Stores Company was never known in the transaction. He was inclined to think that he asked plaintiff to get an order from Charles Stallard to issue the stock to her and that they would apply it on his contract. O. W. Kunz, assistant treasurer of the Midland Stores Company, stated that the check came in his mail in a letter from Mr. Frail. He understood that the check was in payment of stock which Mr. Stallard had bought from Mr. Stanard. He indorsed Mr. Stanard's name on it and deposited the check to the latter's credit. The check was payable to the Midland Stores Company. It was given for four shares in Grayson's store No. 14. There was a verbal understanding that the check was from C. W. Stallard in payment for stock. The Midland Stores Company was never credited

with the check. He only indorsed Mr. Stanard's name. Col. W. E. Frail, manager of the Midland Stores Company at Spencer, Va., testified that he had been employed at Grayson. He had sold to Mr. Stanard his Grayson stock in the Midland Stores Company, after which Mr. Stanard sold seven shares to C. W. Stallard at the same price. It was his understanding that the stock was not to be issued until paid for. Stallard made the payment by check and asked that it be forwarded to Mr. Stanard. That was the check signed by Catherine Stallard and payable to the Midland Stores Company. He sent the check by letter which he thought he directed to Mr. Stanard. On cross-examination he said that he met plaintiff about July 24, 1928. She did not tell him that her brother-in-law was authorized to transact any business for her. When the check was delivered to him, he did not suggest that it be made payable to O. L. Stanard instead of the Midland Stores Company. Along about that time Charlie wanted to know if it would not be all right to issue the stock to plaintiff. That was after the check was sent in. He thought that at the time or a little later Charlie told him that the shares of stock were to be issued to Catherine Stallard. H. C. Hayden, secretary-treasurer of the Midland Stores Company, testified that the company never received the check or any of the proceeds thereof. He admitted that he offered to pay Catherine Stallard the sum of $584 less $189, the amount that was claimed by the Midland Stores Company for depreciation in the Grayson store. In rebuttal C. W. Stallard testified that he never told Mr. Stanard or any of the parties connected with the Midland Stores Company that the $584 should be credited to his account. The check was then resubmitted to the jury and examined with the aid of a magnifying glass. Printed on the check was ''Midland Stores Company Incorporated.'' Plaintiff further testified that she did not put the indorsement on the check.

Appellant insists that it was entitled to a peremptory instruction because it neither made any contract with appellee nor received the proceeds of the check. Stanard was the president of the corporation. Though he claims that Stallard was to buy the stock from him individually, it must not be overlooked that the stock was to be issued as a part of the contract employing Stallard as local manager at Grayson. In the making

of that contract Stanard was acting on behalf of the company, and there is nothing in the evidence justifying the conclusion that Stallard knew that in the purchase or disposal of the stock he was dealing with Stanard as an individual, and not as the chief officer of the corporation. There is no evidence to the effect that the check in question was intended as a loan by appellee to her brother-in-law. All the circumstances show that she understood and expected that the stock was to be delivered to her. Even if Frail was not informed of this fact at the time the check was handed to him, he was told some two or three days later that appellee was the woman to whom the stock was to be issued. The check itself was payable, not to C. W. Stallard, but to the Midland Stores Company. Written on its face was, ''For four shares in Grayson store No. 14.'' Mr. Kunz, the assistant treasurer, admits that this check was received in his mail. The very purpose of his official position was to have some one authorized to receive payments and indorse checks on behalf of the company. Notwithstanding his assumption that the check was intended for O. L. Stanard individually, he knew that the check was payable to the company and was charged with notice of the purpose for which the check was given. In other words, he knew that the check was the property of the company, and was without authority to place it to the credit of the president or any one else. Hence, when he accepted the check on behalf of the company, he accepted it upon the terms and conditions therein stated, thus completing the contract between the parties. His act was the act of the company, and the company, whether a party to the original contract or not, thereby became bound either to issue the stock or return the check to appellee. Its remedy is against those who participated in the unauthorized diversion of its property. It follows that the court did not err in overruling the motion for a peremptory.

Complaint is made of instruction No. 1, which is as follows: ''If you believe from the evidence that the plaintiff contracted with the Midland Stores Co. to purchase 4 shares of its stock for $584.00 and that she executed her check to said company for said amount and delivered it to an officer agent of said defendant and that said defendant either collected the amount thereof or turned same over to some other person who collected

same, and said stock was not delivered to her, then you will find for the plaintiff the sum of $584.00 with interest from the 3rd day of August, 1928 and unless you so believe you will find for defendants.''

There being no disagreement as to material facts, the case is almost one where the court would have been justified in giving a peremptory for appellee.' Certainly, the giving of the instruction which conforms substantially to the principles heretofore announced cannot be regarded as prejudicial error.

Judgment affirmed.